In the Matter of JAMES P. CONLON et al., in Behalf of Themselves and All Others Similarly Situated, Appellants, *v.* THOMAS F. McCOY, as State Administrator of the Administrative Board of the Judicial Conference of the State of New York, Respondent; SAMUEL LOBELL et al., Intervenors.

First Department, March 28, 1967.

*Charles Haydon* of counsel (*Dublirer & Haydon,* attorneys), for appellants.

*Lawrence N. Marcus* for respondent.

*Morris Weissberg* for intervenors.

STEUER, J. P. This appeal, an article 78 proceeding against the State Administrator and the Administrative Board of the Judicial Conference, concerns two examinations. One is for the position of Assistant Court Clerk and the other for Senior Court Officer. As to the first, we agree with the conclusion and reasons stated in the opinion of SILVERMAN, J., below, and so much of the order is accordingly affirmed.

The position of Senior Court Officer is included in respondent's title structure. It is the grade immediately superior to Uniformed Court Officer. The specification contains this provision: '' Qualifications: One year of permanent service as a Uniformed Court Officer.'' So by respondent's own rules, it appears that the only persons qualified for appointment to the position of Senior Court Officer are those who have served at least one year as a Uniformed Court Officer, and that these persons should be the only ones eligible to take an examination for appointment to the position.

The examination under review was not so limited. While styled an '' open competitive examination,'' it was not such in the strict acceptance of the term. It was limited to those having the requisite qualification of prior service and to members of the Bar of this State.

Respondent has the authority and duty to administer the Unified Court System (N. Y. Const., art. VI, § 28). As regards nonjudicial personnel of the courts, it has succeeded to the authority formerly exercised by the State Civil Service Commission. In the exercise of that authority, it is required to act consistently with the Civil Service Law (Judiciary Law, § 212; *Matter of Goldstein* v. *Lang,* 16 N Y 2d 735, revd. on dissenting opn. below 23 A D 2d 483). A cardinal principle of such administration is that the administrative body is bound by its own rules (*Mendelson* v. *Finegan,* 253 App. Div. 709). Respondent does not dispute any of the above but instead seeks to bring its action in extending the eligibility requirements within its rules.

It claims, firstly, that, having the power to fix qualifications, it could at any time change them. Though this is true, assuming that rights are not affected thereby, a rule respecting eligibility cannot be changed by announcing an examination with a different test of eligibility (cf. *Matter of O'Brien* v. *Delaney,* 255 App. Div. 385; also, cf. *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435, as to whether so doing is constitutionally interdicted).

Respondent relies on its rule 15(b) of the Administrative Board's Career Service Rules which, in providing for promotional examinations, says that the same shall be held where

"practicable." Respondent points to a policy, indisputably desirable, to introduce lawyers into the career service of the courts. It is further alleged that, in order to accomplish this aim, it will be necessary to provide a place for them in the title structure from which they can advance by promotional examination through the various grades of clerks; and that the position of Senior Court Officer is an appropriate position for that introduction, as the necessity for service as a Uniformed Court Officer might discourage lawyers from entering the service.

While all of this may be quite sound, it does not bring the action taken within the rule. Practicability, in the context of respondent's rule, refers to the absence of eligibles or other difficulties which would prevent either the holding of an examination or the examination becoming effective (*Matter of Cornehl* v. *Kern,* 260 App. Div. 35, affd. 285 N. Y. 777). Here, the qualifications for the examination were broadened not because it was impractical to hold a promotional examination but because it was thought desirable to effect a change in policy.

Special Term was not misled by any of the above, and concluded that the extension of eligibility was improper. But in an endeavor to both protect the rights of the eligibles and to carry out the purpose of the respondent, the court ordered that the list resulting from the examination should be administered as follows: vacancies in the position of Senior Court Officer should be filled first by the eligibles passing the examination, in the order of their grades; and when these had all received appointment, the lawyers, outside the service, who had passed the examination should then receive appointment. In effect, the list was made into two lists. Without questioning the Solomonic simplicity of this resolution, it is no more permissible than splitting the baby would have been conscionable. A list cannot be fractured to overcome objections (see *Matter of Barthelmess* v. *Cukor, supra,* p. 444 *et seq.*).

We conclude that there is no way to cure the defective notice except by declaring it void, with the inevitable consequence that the examination held pursuant to it suffer the same fate. The latter consequence is dictated not only by logic but by equitable considerations. The proper eligibles, the Uniformed Court Officers, were presented with an open examination in which they may well have doubted their ability to compete successfully. They have been deprived of, and should have, the opportunity to compete in an examination limited as required by law.

The judgment should be modified on the facts and the law by striking the provisions as to the examination for Senior Court

Officer and vacating the notice for said examination and annulling the examination and any list promulgated in accordance with it, and the order otherwise affirmed, without costs.

TILZER, J. (dissenting in part). I dissent and vote to affirm the judgment appealed from both as to the position of Senior Court Officer and as to the position of Assistant Court Clerk.

The majority do not question the authority, indeed the duty, of the respondent to administer the Unified Court System. The task of establishing such a structure on a State-wide basis was entrusted to the Administrative Board on September 1, 1962. The Administrative Board is a unique civil service authority in that it does not service a myriad of departments or agencies with completely unrelated functions, but rather services a homogenous group of employees, all employed in the courts, or units servicing the courts. The first mission undertaken by the respondent was a mammoth job classification of the positions and functions of some 5,000 nonjudicial employees in the courts of the City of New York. On November 1, 1964 rules were adopted to govern the operation of the judicial civil service system. On June 18, 1965, title specifications were finally adopted describing the main duties and responsibilities encompassed by each title and containing lines of promotion.

At the time that the examination was announced for the position of Senior Court Officer in March, 1966, the installation of the title structure had not been completed in New York City. As the result of a meeting attended by members of the Administrative Board, Justices of the Trial Bench from this and the Second Department and others, it was decided that the entrance of lawyers into the career service of the judicial system had to be assured because certain of the higher positions in the court organization were of such a nature and responsibility that they required that the persons filling them be attorneys admitted to practice in the State of New York. The lines of promotion, pursuant to the rules of the board, were thereupon modified so that the examination for the position of Senior Court Officer became an open competitive rather than a promotional examination.

Prior to the holding of this examination, all examinations for the Senior Court Officer position, virtually limited to the court officer positions in the Supreme Court, had been of the open-competitive type open to (1) members of the Bar of the State of New York, (2) persons with three years of law enforcement experience or (3) persons with three years of court experience.

The minimum qualifications of the examination here in question (admission to the Bar of the State of New York; or one year of permanent satisfactory experience as a court officer in the lower courts; or one year of experience as a court officer in the Supreme or Surrogate's Courts), if compared to the minimum qualifications of former examinations, disclose that this examination was in effect a promotional examination for the petitioners Uniformed Court Officers. The petitioners in this action took the examination.

The Special Term concluded that the determination to hold an open-competitive examination was an abuse of discretion on the part of the board. The respondent Administrative Board points to the inconsistency of the Special Term opinion which held that the open-competitive examination was an abuse of discretion but nevertheless permitted it to stand since all those declared eligible by the board to take the examination and who were successful, found themselves on a list. Regrettably, the Administrative Board has not cross-appealed from the determination of the Special Term. The majority of this court hold that in failing to restrict the examination for Senior Court Officer to those holding the position of Uniformed Court Officer the board acted inconsistently with civil service law.

But recently, two members of this court had occasion in a dissenting opinion (the Court of Appeals reversing this court on such dissenting opinion — *Matter of Goldstein* v. *Lang,* 23 A D 2d 483, revd. 16 N Y 2d 735) to interpret the language of section 212 of the Judiciary Law that the standards and policies of the present respondent Administrative Board with respect to personnel practices "shall be consistent with the civil service law." The word "consistent" as contrasted with the word "governed" previously in the statute, the dissenters believed, meant that "the administrative board is bound by the general principles of civil service but that it has discretion and power to fit the particular application to the situations it is required to meet. * * * It is unreasonable and unrealistic to suppose that the Legislature would have vested the administrative board with the authority and responsibility for the administrative supervision of the unified court system without affording them the tools to carry out that responsibility, or vesting in them at least a limited measure of discretion." (*Matter of Goldstein* v. *Lang,* 23 A D 2d 483, 486, *supra.*)

The particular situation that confronted the Administrative Board here was the necessity of attracting lawyers to ultimately fill "certain of the higher positions in the court * * * of such a nature and responsibility that they required that the

persons filling them be attorneys admitted to practice in the State of New York ''. And exercising the power and discretion vested in it, rather than confine the entry of lawyers to the court system to a competition with high school graduates for the position of uniformed officer in the inferior courts, it was decided that the examination for the position of Senior Court Officer would be an open competitive one allowing members of the Bar of the State of New York to compete on the Supreme Court level.

We find a reasonable basis to justify the action taken by the board and hold that in the circumstances there has been no violation of fundamental constitutional provisions. The courts will not interfere with the judgment and discretion of civil service commissions in determining that the public interest will be best served by an open competitive examination rather than by a promotional examination (*Matter of Fitzgerald* v. *Conway,* 195 Misc. 397, 401 [Sup. Ct., Albany County, 1949], affd. 275 App. Div. 205; *Matter of Kinnerney* v. *Hornell Civ. Serv. Comm.,* 262 App. Div. 39 [4th Dept., 1941]).

'' The determination as to when it is practicable to fill vacancies in the service by promotion through an examination restricted to persons holding positions in a lower grade in the department in which the vacancy exists instead of by competitive examination with eligibility open to all persons has been confided by the Legislature to the Civil Service Commission which acts in a legislative and not a judicial capacity and in the absence of a clear showing that its determination was corrupt, arbitrary or illegal, the court will not interfere with the judgment and discretion which it has exercised [citing cases]. It is not enough to argue or prove that a promotional examination would have been preferable or more desirable or that a court would have come to a different conclusion [citing case]. Only an abuse of the power which rests with the commission will invite judicial interference.'' (*Matter of Martin* v. *Conway,* 199 Misc. 451, 452–453.)

The respondent was in the best position to evaluate the capacity of the Uniformed Court Officers and to judge of their ability to perform in the higher positions of the court system. Its determination not to limit the examination for Senior Court Officer to those performing the functions of a court officer in the lower courts, in the circumstances, was neither corrupt, arbitrary, capricious, discriminatory, erroneous nor illegal. The constitutional direction to make a selection by competitive examination, where practicable, and the implementing provisions of civil service law that vacancies shall be filled, so far as

practicable, by promotion, are not unconditional mandates "barring the reasonable exercise of discretion on the part of those administering the merit system to decide that such examinations are not practicable in a given case." (*Matter of Feeney* v. *Village of Bronxville,* 185 Misc. 1, 4 [Sup. Ct., Westchester County, 1945], affd. 269 App. Div. 1040, affd. 295 N. Y. 904.)

Although we may differ as to the action taken by the Administrative Board, it was a judgment within its province and should not be substituted by the judgment of an appellate court. The respondent is engaged in constructing a career service in the judicial branch of government of the State of New York. Latitude must be allowed it in molding its building. If its title specifications fail to sustain its framework, they may be changed so long as they do not affect structural members. The court will supervise the performance of the work not in the position of a super civil service commission, but in our traditional role and will intervene only when the action of the board is palpably illegal. (*Matter of Green* v. *Lang,* 18 N Y 2d 437, 444; *Matter of Simons* v. *McGuire,* 204 N. Y. 253; *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92.)

The judgment appealed from should be affirmed.

McNALLY and STALEY, JR., JJ., concur with STEUER, J. P.; TILZER, J., dissents in part in opinion in which RABIN, J., concurs.

Judgment so far as appealed from modified, on the facts and on the law, by striking the provisions as to the examination for Senior Court Officer and vacating the notice for said examination and annulling the examination and any list promulgated in accordance with it, and, as so modified, affirmed, without costs and without disbursements.